UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.: 2:05-CV-598-FtM-33DNF

| | |
|---|---|
| GREG W. STAKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMY STANFORD, individually, | ) |
| DANIEL SALLS, individually, and | ) |
| DON HUNTER, as SHERIFF OF | ) |
| COLLIER COUNTY, Florida | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF, GREG W. STAKEY'S, MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT DON HUNTER, AS SHERIFF OF COLLIER COUNTY'S,
<u>MOTION FOR SUMMARY JUDGMENT (AS TO COUNT III ONLY)</u>**

**COMES NOW** the Plaintiff, GREG W. STAKEY, by and through his undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 56 and M.D. Fla. L.R. 3.01, hereby submits his response to Defendant DON HUNTER, as SHERIFF of COLLIER COUNTY's, "Motion for Summary Judgment" (as to Count III only), and in support thereof states the following:

1.     This is a civil action by Plaintiff GREG W. STAKEY (hereinafter "Stakey" or "Plaintiff Stakey") seeking relief pursuant to 42 U.S.C. § 1983 and Florida law against Defendant AMY STANFORD, individually (hereinafter "Stanford" or "Defendant Stanford), DANIEL SALLS, individually (hereinafter "Salls" or "Defendant Salls"), and Defendant DON HUNTER, as SHERIFF of COLLIER COUNTY, Florida (hereinafter "Collier County Sheriff's Office" or "Defendant Collier County Sheriff's Office").

2.      Count III of Plaintiff's Amended Complaint is a so-called "custom, policy, or practice claim" against Defendant DON HUNTER, as SHERIFF of COLLIER COUNTY, Florida, pursuant to Monell v. Department of Social Services of City of New York, 98 S.Ct. 2018 (1978), and 42 U.S.C. § 1983.

3.      Defendant Collier County Sheriff's Office seeks summary judgment as to Count III only.

## STATEMENT OF FACTS

### 1.      Introduction

For purposes of their Motion for Summary Judgment, the Collier County Sheriff's Office assumes, *arguendo*, that Plaintiff Stakey's rights were under pursuant to the Fourth Amendment were violated[1].    Stakey's "Statement of Facts" addresses, therefore, only the issues raised in Defendant Collier County Sherif's Offices's motion for summary judgment as to Count III, and not the specific (and disputed) circumstances of Stakey's civil commitment pursuant to the "Hal S. Marchman Alcohol and Other Drug Services Act of 1993" [hereinafter Marchman Act], Florida Statute § 397.675.

### 2.      Testimony of Defendant Amy Stanford

Stanford began her career with the Collier County Sheriff's Office as a corrections officers, and began working as a road patrol officer in August, 2001. (Deposition of Amy Stanford, pp. 4-5). In Stanford's entire career as a road patrol officer there has never been any instance where she has failed to offer a DUI suspect the opportunity to submit take roadside sobriety tasks.   There has also

---

[1]

The circumstances of Stakey's involuntary civil commitment are the subject of a significant number of material disputes of fact.   No motion for summary judgement was filed by either Defendant Stanford, individually, or Defendant Salls, individually.

2

never been any instance where Defendant Stanford has failed to offer a person arrested for DUI the opportunity to submit to breath alcohol testing.   (Deposition of Amy Stanford, pp. 30-31).

Defendant Stanford explained that, insofar as the Collier County Sheriff's Office is concerned, the principles applicable to DUI arrests do not apply to civil commitments under the Marchman Act.   Defendant Stanford testified:

> Q.      [By Mr. Koerner]      Did you see Mr. Medina conduct any investigation that would allow him to determine whether Mr. Stakey was intoxicated?
>
> A.      [By Defendant Stanford]      I don't remember if I did.
>
> * * *
>
> Q.      Would you agree with me that to conduct a good faith and reasonable investigation as to whether someone is intoxicated, to use your term, that you want to do the same sorts of investigations or investigating that you would do under circumstances where you are trying to apprehend someone who may have been driving under the influence of alcoholic beverages or chemical or controlled substances?
>
> A.      No.
>
> Q.      Why is it that you would not conduct the same sort of investigations that you would do in the context of a DUI under the circumstances that you encounter[ed] with Mr. Stakey?
>
> A.      I was not trained to do that for a Marchman Act.

(Deposition of Amy Stanford, pp. 124-25).

> Q.      According to Dan Salls, this person [Stakey] was just walking down the street, correct?
>
> A.      Yes.  Observed by Dan Salls.
>
> Q.      And there is no indication that the person is acting in a furtive manner, hiding, that sort of thing, correct?
>
> A.      Correct.

Q.      There not running, correct.

A.      No.

Q.      They're not acting in a suspicious manner whatsoever, correct?

A.      No.

(Deposition of Amy Stanford, pp. 77-78).

Q.      Did he [Stakey] appear to be sick or injured when you first came into contact with him?

A.      No.

Q.      Did you call for an ambulance when you first came into contact with Stakey?

A.      No.

Q.      You had no fear for his physical safety when he was out with you?

A.      No.

* * *

Q.      Where was Mr. Stakey taken for the Marchman Act?

A.      He was taken to the Naples Jail Center.

Q.      Is there a breathalyzer there?

A.      Yes.

Q.      Why is it that you didn't have Mr. Stakey take a breathalyzer at the jail?

A.      I don't think he asked me, sir.

Q.      Why is it that you yourself didn't offer Mr. Stakey the opportunity for a breathalyzer?

A.      I wasn't trained to do that for Marchman Act.

4

(Deposition of Amy Stanford, pp. 140-41).

Defendant Standford estimated that she has subjected between 50-100 persons to involuntary civil commitment during her career with the Collier County Sheriff's Office. (Deposition of Amy Stanford, p. 163). Defendant Stanford is not aware of any member of the Collier County Sheriff's Office administering roadside sobriety tasks prior to any civil commitment. Defendant Stanford testified:

> Q.     Have you ever heard of an instance for when your colleagues Marchman Acted somebody?
>
> A.     Yes.
>
> Q.     And have you ever observed anybody at your department give somebody the road side sobriety tests prior to Marchman Acting somebody for alcohol abuse?
>
> A.     Never.
>
> Q.     Would you agree with me that it is the customary practice and policy of the Collier County Sheriff's Office to not administer any sobriety tests of persons prior to their commitment under the Marchman Act?
>
> A.     I've never done that myself.  I've never seen anyone do that for the Marchman Act.
>
> Q.     So would you agree with me that it seems to be the customary practice of both yourself and your colleagues at the Collier County Sheriff's Office to not have persons perform any sobriety tests prior to committing them pursuant to the Marchman Act?
>
> A.     Yes.
>
> * * *
>
> Q.     And if I understand your testimony correctly, it is your position that the reason that you did not submit Mr. Stakey to any sort of sobriety testing was that the policies at the Collier County Sheriff's Office did not direct you to subject Mr. Stakey to such testing, correct?

5

A.      Yeah, I wasn't trained to do that.

Q.      And customarily nobody ever subjects anybody to sobriety testing for Marchman Acting them, correct?

A.      Yes.

Q.      You would agree with me that had the policy said to conduct an investigation regarding whether somebody is in fact under the influence of alcohol by administering sobriety tests and/or chemical breath tests that you would have done so, correct?

A.      Yes.

(Deposition of Amy Stanford, pp. 165-66, 169-70).

**3.      Testimony of Defendant Daniel Salls**

The testimony of Salls is consistent with Stanford's testimony.  Salls testified:

Q.      [By Mr. Koerner]      . . . Is there any instance you can think of as you sit here today in your entire career with the Collier County Sheriff's Office where you became aware of any Marchman Act done by any deputy in which there was ever a circumstance where the person Marchman Acted was afforded the opportunity to take those road side sobriety tasks before or after being taken into custody?

A.      [By Daniel Salls]      Not that I recall.

Q.      Did you ever instruct your trainees or recruits that as a precondition of taking someone into custody under Marchman Act that they should be afforded the opportunity to submit to road side sobriety tasks?

A.      I don't believe so.

Q.      Why is it that [if] a person has a constitutional right not to be deprived of their liberty in the absence of probable cause, either [because] they committed a crime or [fit the] criteria for Marchman, would you in a DUI context at least offer these road side sobriety tasks to those people that are too drink [sic] but in Marchman you can't tell me that this happens as a matter of course?

A.      I can't tell you that, sir.   This is just  how we were trained.

(Deposition of Defendant Salls, pp. 60-61).

6

**4.     Person(s) with the most knowledge at the Collier County Sheriff's Office of the number of persons annually subjected to civil commitment by the Sheriff of Collier County pursuant to the Marchman Act (for the 5 year period ending November 10, 2002).**

Pursuant to Fed. R. Civ. P. 30(b)(6), Commander Joe Bastys was presented as the person with the most knowledge of the number of individuals annually subjected to civil commitment by the Sheriff of Collier County pursuant to the Marchman Act (for the 5 year period ending November 10, 2002).

Commander Bastys testified that every person who is Marchman Acted in Collier County is taken to the Collier County Jail.  (Deposition of Joe Bastys, p. 17).  There is no record, however, of which police agency in Collier County performed the Marchman Act.  (Deposition of Joe Bastys, p. 18).

The Collier County Sheriff's Office has approximately 600 certified law enforcement officers.  (Deposition of Joe Bastys, p. 18).   The next largest police department in Collier County is the City of Naples Police Department,  with less than 50 certified law enforcement officers.  (Deposition of Joe Bastys, p. 20).  The Florida Wildlife Commission, Florida Marine Patrol, Florida Highway Patrol, and some park rangers in the Big Cypress area, also have arrest powers.  (Deposition of Joe Bastys, pp. 20-21).   Finally, the City of Marco Island has a small police department.   (Deposition of Joe Bastys, pp. 24-25).

According to Commander Bastys, given its size, the vast majority of involuntary civil commitments are made by the Collier County Sheriff's Office.  (Deposition of Joe Bastys, p. 25).

The following chart depicts the number of persons annually admitted into the Collier County Jail for the years 1997-2002.   As reflected in the chart, for the year 2002, nearly 15% (that is not a typographical error) of all persons admitted into the Collier County Jail were jailed on the basis

7

of the Marchman Act. The first column of the chart represents the year. The second column represents the total number of persons admitted into the jail (including persons subjected to involuntary civil commitment pursuant to the Marchman Act). The third column shows the number of persons admitted into the Collier County Jail under the Marchman Acted, per year. The fourth column represents the percentage of all persons admitted into the Collier County Jail pursuant to the Marchman Act.

| YEAR | TOTAL NUMBER OF ADMISSIONS (BY YEAR) | TOTAL NUMBER OF ADMISSIONS BASED ON MARCHMAN ACT (BY YEAR) | PERCENTAGE OF ALL ADMISSIONS BASED ON MARCHMAN ACT (BY YEAR) |
|---|---|---|---|
| 1997: | 17,366 | 1,538 | 8.86% |
| 1998: | 15,763 | 1,971 | 12.5% |
| 1999: | 15,722 | 2,325 | 14.79% |
| 2000: | 17,538 | 2,256 | 12.86% |
| 2001: | 17,246 | 2,454 | 14.23% |
| 2002: | 17,347 | 2,490 | 14.35% |

*[Chart developed from data provided by Commander Joe Bastys]* (Deposition of Joe Bastys, p. 17).

Don Hunter, the Sheriff of Collier County, is provided with a "quarterly report" which includes the number of persons admitted into the Collier County Jail, as well as the number of persons admitted into the Collier County Jail based on the Marchman Act. (Deposition of Joe Bastys, pp. 53-55).

According to Commander Bastys, there has never been any procedure (during the time frame of 1997-2002) which afforded Marchman Act detainees the opportunity to take a breath test. (Deposition of Joe Bastys, p. 43). Nor has the jail (during the time frame of 1997-2002) ever provided Marchman Act detainees the opportunity to submit to so-called roadside sobriety tests. (Deposition of Joe Bastys, pp. 47-48). Nor is Commander Bastys aware of any instance where any

Marchman Act detainee (during the time frame of 1997-2002) was ever offered the opportunity to submit to roadside sobriety tests before their arrival at the jail.  (Deposition of Joe Bastys, p. 50).

> **5.** **Person or persons with the most knowledge at the Collier County Sheriff's Office of the training provided to law enforcement officers for the Sheriff of Collier County concerning the investigation and processing of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act (as of November 10, 2002), including the administration of sobriety testing and breath alcohol testing.**

Pursuant to Fed. R. Civ. P. 30(b)(6), Lieutenant Jeremiah Carroll, a "Field Supervisor" for the Collier County Sheriff's Office, was designated as the person with the most knowledge of the training provided to law enforcement officers for the Sheriff of Collier County concerning the investigation and processing of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act (as of November 10, 2002), including the administration of sobriety testing and breath alcohol testing.   As of November 20, 2002, Lieutenant Carroll was responsible for training at the Collier County Sheriff's Office (Deposition of Jeremiah Carroll, p. 8).  Lieutenant Carroll has 18 ½ years experience with the Collier County Sheriff's Office.   (Deposition of Jeremiah Carroll, p. 7).  Lieutenant Carroll testified:

> Q.     Are you aware of anybody at any level instructing people with regards to DUI investigations - - not the Marchman Act - - DUI investigations that there is a constitutional obligation to conduct a reasonable investigation to establish probable cause?
> A.     For DUI?
>
> Q.     Yes.
>
> A.     Yes.
>
> Q.     Do you agree that that same constitutional obligation to conduct a reasonable investigation to establish probable cause pertains to involuntary civil commitment pursuant to the Marchman Act?
>
> A.     No

No.   One is a civil infraction, and the other is a criminal infraction. We have to differentiate between the two.

(Deposition of Jeremiah Carroll, pp. 11-12).

\* \* \*

Q.      And you seem to be telling me that for purposes of instructing your subordinates that you differentiate at some level between what I have just described in the criminal context and what you teach in regards to Marchman Acts; correct?

A.      Correct.

Q.      Can you explain to me how you differentiate between the criminal context and the civil commitment context to the subordinate that is trying to get the understanding?

A.      They are treated -- under the civil commitment they are treated as a victim so, therefore, there would be no seizure of them -- of their person under the probable cause constitutional Fourth Amendment.

\* \* \*

Q.      Are you teaching your subordinates for purposes of training that when you take someone and deprive them of their liberty under the Marchman Act by civilly committing them against their will that that is not a seizure under the Fourth Amendment?

A.      Yes.

Q.      And, to the best of your knowledge, is that something that is taught by the persons who have been training deputies at your agency since the time that you have been involved in training?

A.      Yes, sir, it is.

Q.      And was that same policy taught when you were an up-and-coming law enforcement officer?

A.      Yes.

(Deposition of Jeremiah Carroll, pp. 16-17).

**6.      Person or persons with the most knowledge at Defendant Don Hunter, as Sheriff**

10

**of Collier County, Florida of the customs, policies, and practices of the Sheriff of Collier County concerning the investigation of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act (as of November 10, 2002), including the administration of sobriety testing and breath alcohol testing.**

Pursuant to Fed. R. Civ. P. 30(b)(6), Lieutenant Carroll was also designated as the person with the most knowledge of the customs, policies, and practices of the Sheriff of Collier County concerning the investigation of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act (as of November 10, 2002), including the administration of sobriety testing and breath alcohol testing.  (Deposition of Jeremiah Carroll, pp. 6-7, 10).

> Q.      And because you perceive the civil commitment or the Marchman Act to not be a seizure under the Fourth Amendment, would you agree with me that you have not seen a corresponding obligation for officers to offer roadside sobriety tests, drug recognition experts, chemical breath tests in the context of civil commitment under the Marchman Act?
>
> A.      That is correct.
>
> Q.      Would you also agree with me that there is a widespread practice in Collier County of doing different types of investigations in the context of a DUI arrest as opposed to a civil commitment under the Marchman Act?
>
> A.      Can you state that again.
>
> Q.      Yeah.   I am trying to say in plain language that I accept your explanation that as a matter of course given the chance that people who are suspected of DUI in Collier County are offered roadside sobriety tests, and after their arrest, they are offered a breath test; correct?
>
> A.      Yes.
>
> Q.      And it is my understanding based upon what I have been told is that none of that happens in the Marchman context. There are no roadside sobriety tasks as a matter of course; there are no breath tests as a matter of course; is that accurate?
>
> A.      That is accurate.

(Deposition of Jeremiah Carroll, pp. 23-25).

> Q.     Can you, in your position as the person with the most knowledge at the Collier County Sheriff's Office of the customs, policies, and practices of the sheriff concerning the investigation of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act, speak for the sheriff with regards to what you have told me so far here today?
>
> A.     Yes.
>
> Q.     And is the same true with regards to you being able to speak for the sheriff with regards to the person with the most knowledge at the Collier County Sheriff's Office and the training provided to law enforcement officers regarding the investigation and processing of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act including the administration of sobriety tests and breath alcohol testing?
>
> A.     Yes.

(Deposition of Jeremiah Carroll, pp. 27-28).

**7.      Affidavit of Jim Bloom**

In support of their motion for summary judgment, the Collier County Sheriff's Office filed the affidavit of Jim Bloom.  Attached to Bloom's affidavit is the "Civil Substance Abuse Procedures and Guidelines (Marchman Act)."  This written policy simply dovetails Florida Statute § 397.675, without providing any guidelines as to how the policy should be implemented.

**8.      Testimony of Captain Albert Beatty**

On October 27, 2006, Captain Albert Beatty, the head of Professional Responsibility for the Collier County Sheriff's Office, was produced pursuant to Fed. R. Civ. P. 30(b)(6).  According to Captain Beatty, for the past 10 years, there has never been any officer disciplined for any matter relating to the decision to subject an individual to civil commitment pursuant to the Marchman Act. (Deposition of Albert Beatty, p. 12).  Captain Beatty testified:

> Q.     And as long as you have been in the agency, are you aware of there being any particular policies or procedures that specifically govern how a deputy is supposed to go about their duties and responsibilities with regards to civilly

12

committing a person subject to the Marchman Act?

      A.     Is there an agency policy regarding that?

      Q.     Yes.

      A.     Yes.

      Q.     Beyond what I have here that quotes the statute, is there any policy?

      A.     No, sir. I believe our policy mirrors the state statute.

      Q.     Well, it is identical to the state statute. It quotes it; correct?

      A.     I believe so, sir.

      Q.     It says nothing with regards to how the state statute should be implemented; correct?

      A.     I believe that is correct.

* * *

      Q.     Aside from failing to follow state law, there is nothing that guides or serves as a policy with regards to persons civilly committed by your department; correct?

      A.     I guess I would agree with that.

(Deposition of Albert Beatty, pp. 12-13).

      Q.     You would agree with me that you can't civilly commit someone unless there is probable cause that they fit the criteria for involuntary civil commitment pursuant to Florida law; correct?

      A.     I would agree with that.

      Q.     We can agree to those basic premises; true?

      A.     Yes, sir.

      Q.     From that starting point, you would also agree with me that police officers in your department had a duty to conduct a reasonable investigation to establish probable cause; correct?

13

A.     I agree.

Q.     What is it in your agency pursuant to your policies that constitutes reasonable investigation to establish probable cause pursuant to the Marchman Act?

A.     Well, the officer is going to -- you can go by the Florida statute. That would establish- in his own mind that the person met the criteria for being Marchman Acted.

(Deposition of Albert Beatty, pp. 15-16).

Q.     Is there anything that you are aware of that your officers are, pursuant to your policies, directed to do that provides objective criteria scientific or otherwise to aid the officer in making their determination as to whether someone fits the criteria for involuntary civil  commitment?

A.     If you are asking -- to use something like a Breathalyzer or specifically doing the field sobriety tests, no, I don't believe that is an agency policy.

(Deposition of Albert Beatty, p. 23).

Q.     But if similarly people are being committed across the agency on a regular basis without there ever being an opportunity for roadside sobriety tests -- breath tests, that does not trouble you in the least. Is that my understanding of your testimony?

A.     I don't believe the state statute requires it.

(Deposition of Albert Beatty, p. 42).

## MEMORANDUM OF LAW

**1.     Application of the Fourth Amendment in civil cases**

The United States Supreme Court has consistently held that the Fourth Amendment is applicable to governmental conduct that is civil in nature.  Soldal v. Cook County, Illinois, 113 S.Ct. 538, 548 (1992); O'Connor v. Ortega, 107 S.Ct. 1492, 1496 (1987); New Jersey v. T.L.O., 105 S.Ct. 733, 739 (1985).  Lieutenant Carroll testified concerning the training policies of the Collier County Sheriff's Office:

14

Q.    Are you teaching your subordinates for purposes of training that when you take someone and deprive them of their liberty under the Marchman Act by civilly committing them against their will that that is not a seizure under the Fourth Amendment?

A.    Yes.

Q.    And, to the best of your knowledge, is that something that is taught by the persons who have been training deputies at your agency since the time that you have been involved in training?

A.    Yes, sir, it is.

Q.    And was that same policy taught when you were an up-and-coming law enforcement officer?

A.    Yes.

(Deposition of Jeremiah Carroll, pp. 16-17).   Put simply, Lt. Carroll is incorrect.   An involuntary commitment under the Marchman Act constitutes a "seizure" under the Fourth Amendment.

**2.    Application of the probable cause standard in involuntary civil commitment cases**

Every Circuit Court of Appeal to decide the issue has concluded that the probable cause requirement of the Fourth Amendment applies to claims of involuntary civil commitment.  Anaya v. Crossroads Managed Care Systems, Inc., 195 F.3d 584, 594 (10th Cir. 1999); Maag v. Wessler, 960 F.3d 773, 775 (9th Cir. 1991); Harris v. Pirch, 677 F.2d 681, 686 (8th Cir. 1982); McKinney v. George, 726 F.2d 1183, 1187 (7th Cir. 1984); Fisher v. Harden, 398 F.3d 837, 842-43 (6th Cir. 2005); Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997); Martinez v. Smith, 200 F.3d 816, 1999 WL 1095667 *1 (5th Cir. 1999); Gooden v. Howard County, Maryland, 954 F.2d 960, 967-68 (4th Cir. 1991); Glass v. Mayas, 984 F.2d 55, 58 (2nd Cir. 1993); McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996); In re Barnard, 455 F.2d 1370, 1373 (D.C. Cir. 1971).   Even the Collier County Sheriff's Office agrees that you cannot subject a person to involuntary civil

15

commitment unless there is probable cause that they fit the statutory criteria set forth in the Marchman Act.  (Deposition of Albert Beatty, pp. 15-16).

### 3.  Duty to conduct a reasonable investigation to establish probable cause

It is well settled that law enforcement officials have a duty to "conduct a reasonable investigation to establish probable cause." Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998). Although an investigation need not be error-free, officers may not "investigate selectively" or perform "investigation[s] in a biased fashion or elect not to obtain easily discoverable facts . . ." Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004) (false arrest claim based in part upon theory that police officer's failure to call in drug-sniffing dog to corroborate officer's claim that vehicle smelled of cannabis).  This approach "serves to deter dishonest officers from fabricating charges to cover up improper detentions. . . ." Kingsland v. City of Miami, 382 F.3d at 1229 (citing Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988)).

"[T]he standard for determining the existence of probable cause is the same under both Florida and federal law." Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998).  This includes the duty to conduct a reasonable investigation to establish probable cause.  Harris v. Lewis State Bank, 482 So.2d 1378, 1382 (Fla. 1st DCA 1986).

Lieutenant Carroll testified that in his position as the person with the most knowledge at the Collier County Sheriff's Office of the polices, or customs, practices, and usages of the Collier County Sherif's Office concerning the investigation of persons suspected of fitting the criteria for civil commitment pursuant to the Marchman Act, that he had the authority to speak on behalf of Sheriff Don Hunter.  (Deposition of Jeremiah Carroll, pp. 27-28).  In this capacity, Carroll testified that it was the official policy or the custom, practice, and usage of the Collier County Sheriff's

Office that the constitutional obligation to conduct a reasonable investigation to establish probable

cause does not apply to investigations under the Marchman Act.  Carroll explained:  "One is a civil

infraction, and the other is a criminal infraction. We have to differentiate between the two."

(Deposition of Jeremiah Carroll, pp. 11-12).   This is a flatly unconstitutional policy, custom,

practice, or usage.  It is also a policy, custom, practice, or usage that is faithfully followed, and

widespread.    Most importantly, it was an official policy, custom, practice, or usage dutifully

followed by Stanford.  (Deposition of Amy Stanford, pp. 165-66, 169-70).

    **4.      State law statutes and immunities, and the Fourth Amendment**

Florida Statute § 397.675, the "Hal S. Marchman Alcohol and Other Drug Services Act of

1993," provides:

> **Criteria for involuntary admissions, including protective custody, emergency admission, and other involuntary assessment, involuntary treatment, and alternative involuntary assessment for minors, for purposes of assessment and stabilization, and for involuntary treatment** – A person meets the criteria for involuntary admission if there is good faith reason to believe the person is substance abuse impaired and, because of such impairment:
>
> (1)     Has lost the power of self-control with respect to substance use; and either
>
> (2)(a)  Has inflicted, or threatened or attempted to inflict, or unless admitted is likely to inflict, physical harm on himself or herself or another; or
>
> (b)    Is in need of substance abuse services and, by reason of substance abuse impairment, his or her judgment has been so impaired that the person is incapable of appreciating his or her need for such services and of making a rational decision in regard thereto; however, mere refusal to receive such services does not constitute evidence of lack of judgment with respect to his or her need for such services.

Additionally, Florida Statute § 397.6775 states that "[a] law enforcement officer acting in

good faith pursuant to this part may not be held criminally or civilly liable for false imprisonment."

Based on the "good faith" language contained in Florida Statute § 397.675 (and possibly Florida Statute § 397.6775), the Collier County Sheriff's Office adopted a policy, custom, or practice of failing to conduct a reasonable investigation to establish probable cause in Marchman Act cases.   As Captain Albert Beatty testified:

> Q.      What is it in your agency pursuant to your policies that constitutes reasonable investigation to establish probable cause pursuant to the Marchman Act?
>
> A.      Well, the officer is going to -- you can go by the Florida statute. That would establish- in his own mind that the person met the criteria for being Marchman Acted.

(Deposition of Albert Beatty, pp. 15-16).

> Q.      Is there anything that you are aware of that your officers are, pursuant to your policies, directed to do that provides objective criteria scientific or otherwise to aid the officer in making their determination as to whether someone fits the criteria for involuntary civil  commitment?
>
> A.      If you are asking -- to use something like a Breathalyzer or specifically doing the field sobriety tests, no, I don't believe that is an agency policy.

(Deposition of Albert Beatty, p. 23).

> Q.      But if similarly people are being committed across the agency on a regular basis without there ever being an opportunity for roadside sobriety tests -- breath tests, that does not trouble you in the least. Is that my understanding of your testimony?
>
> A.      I don't believe the state statute requires it.

(Deposition of Albert Beatty, p. 42).

Captain Beatty's understanding of Florida Statute § 397.675, at least in light of the requirements of the Fourth Amendment, are flawed.  First, the "good faith" language contained in the Marchman Act must be read in conjunction with requirements of the Fourth Amendment, which turns on probable cause, not "good faith."

18

The Marchman Act was enacted in 1993, and pre-dates the United States Supreme Court's decision in Whren v. United States, 116 S.Ct. 1769 (1996), which held that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. In short, in order to construe Florida Statute §397.675 in a constitutional manner, "good faith" necessarily means probable cause, since any seizure in the absence of probable cause violates the Fourth Amendment.

In this regard, Captain Beatty is patently incorrect when he testified that an officer may subject an individual to involuntary civil commitment under the Marchman Act when the officer, "in his own mind," believes that the person fits the criteria for involuntary civil commitment. (Deposition of Albert Beatty, pp. 15-16). The standard under the Fourth Amendment is objective, not subjective, and under the objective reasonableness standard of the Fourth Amendment, officers have a duty to "conduct a reasonable investigation to establish probable cause." Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998).

Thus, there is no constitutionally sufficient explanation for the policy, custom, practice, or usage of the Collier County Sheriff's Office of offering DUI suspects roadside sobriety tests and breath alcohol testing, while relying solely upon the subjective state of mind of the officer in the context of the Marchan Act. This problem is exasperated by the fact that DUI arrests, like involuntary civil commitments under the Marchman Act, are crimes of opinion, i.e., whether a DUI suspects normal faculties are impaired, or whether a Marchman Act candidate "[h]as lost the power of self-control with respect to substance use" and "by reason of substance abuse impairment, his or her judgment has been so impaired that the person is incapable of appreciating his or her need for such services and of making a rational decision in regard thereto."

In short, the "opinion" of the officer in both the DUI and Marchman Act context must be

based on objectively reasonable information sufficient to satisfy the probable cause requirement of the Fourth Amendment. "The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would "'leave law-abiding citizens at the mercy of the officers' whim or caprice."  Wong Sun v. U.S., 83 S.Ct. 407, 413 (1963) (quoting Brinegar v. United States, 69 S.Ct. 1302, 1311 (1949)).

Secondly, Florida Statute § 397.6775 provides law enforcement officers immunity from criminal or civil liability for false imprisonment so long as they act in "good faith."  Contrary to the understanding of the Collier County Sheriff's Office, the "good faith" exception set forth in Florida Statue § 397.6775 has no application to claims for relief pursuant to 42 U.S.C. § 1983.

In Howlett v. Rose, 110 S.Ct. 2430 (1990), a unanimous United States Supreme Court rejected a similar argument with regards to the state law immunities set forth in Florida Statute § 768.28,[2] in the context of a cause of action under 42 U.S.C. § 1983.  Justice Stevens, writing for the Court, concluded: "To the extent that the Florida law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law." Howlett v. Rose, 110 S.Ct. 2430, 2444 (1990).  Similarly, the "good faith" immunity exceptions set forth in Florida Statue § 397.6775 have no application to constitutional claims pursuant to 42 U.S.C. § 1983.

_____

[2]

Florida Statue § 768.28(9)(a) provides in pertinent part that

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Finally, Florida Statue § 397.6775 provides that "[a] law enforcement officer acting in good faith pursuant to this part may not be held criminally or civilly liable for false imprisonment." This section includes the term "law enforcement officer," not law enforcement agency, or constitutional officer (including a Sheriff sued in his official capacity).   Simply put, the immunity contained in Florida Statue § 397.6775 is no different than any of the other state law immunities provided to law enforcement officers sued in their individual capacities under Florida law, such as the immunities provided in Florida Statute § 741.29(5) and Florida Statute § 901.15(7).   Those statutes, like the "good faith" language contained in Florida Statute § 397.6775, provide nothing more than what is already provided in Florida Statue § 768.28(9)(a), which affords governmental employees immunity from being named in suit so long as they do not act in "bad faith."

### 5.    Custom, policy, and practice claims

There is no respondeat superior liability under § 1983.  Griffin v. City of Opa Locka, 261 F.3d 1295, 1307 (2001). When suing local officials in their official capacities under §  1983, the Plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom, Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005), or the lack of necessary policies. Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) ("As Sheriff of Monroe County, Freeman was directly responsible for formulating policies concerning correct and accurate identification of suspects and ensuring that suspects are accounted for while incarcerated. The evidence presented at trial clearly demonstrated that Sheriff Freeman failed to establish such policies. This lack of well-established policies and procedures caused Rivas's arrest, his unnecessary six-day incarceration, and his resulting humiliation"). Id.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be

21

acting on behalf of the municipality.  A custom is a practice that is so settled and permanent that it takes on the force of law."Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005).

It is well settled that "[a] municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987); Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994).  Additionally, liability may also be imposed

> based on governmental custom even though such a custom has not received formal approval through the body's official decision-making channels. . . . [T]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.

Griffin v. City of Opa Locka, 261 F.3d 1295, 1308 (2001 (citations and quotations omitted).

Liability may be imposed for a single decision by policymakers under appropriate circumstances.  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir.2005) (citing Pembaur v. City of Cincinnati, 106 S.Ct. 1292, 1298 (1986)).  As the Court in Pembaur v. City of Cincinnati explained: "Indeed, any other conclusion would be inconsistent with the principles underlying § 1983. To be sure, 'official policy' often refers to formal rules or understandings-often but not always committed to writing-that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. That was the case in *Monell* itself . . . ."  Id. at 1299.

Finally, a governmental entity may incur liability under § 1983 where its failure to train its employees proximately caused the constitutional violation.  City of Canton v. Harris, 109 S.Ct. 1197, 1205 (1989).  As explained by the Eleventh Circuit in Williams v. City of Homestead, Florida, 2006 WL 3102305 (11th Cir. 2006), "a § 1983 failure-to-train claim against a municipality is valid

only in the limited circumstances where a plaintiff can show that: (1) the municipality inadequately trained or supervised its officers; (2) the failure to train or supervise is a city policy; and (3) the city's policy caused the officer to violate the plaintiff's constitutional rights." Id. at *3.

Under each of the foregoing theories, the Sheriff's motion for summary judgment must be denied.   It is difficult to image that there is any greater single type of admission into the Collier County Jail than admissions pursuant to the Marchman Act.   Nevertheless, the Sheriff has adopted and approved an unwritten policy of treating involuntary commitments under the Marchman Act as "non-seizures."   These "non-seizure" are deemed appropriate when the officer, "in his [or her] own mind," believes that the person fits the criteria for involuntary civil commitment.   (Deposition of Albert Beatty, pp. 15-16).   Objective testing, including roadside sobriety testing and breath alcohol testing, while used uniformly in the context of DUI arrests, is eschewed completely in enforcement of the Marchman Act.   This practice is not just widespread, it is uniform.   And as Stanford explained, had the Sheriff's policy required roadside sobriety tests and/or chemical breath tests, she would have followed the policy. (Deposition of Amy Stanford, p. 169-70).

Stakey never appeared sick or injured, and according to Stanford, she had no fear for his physical safety when she came into contact with him.   (Deposition of Amy Stanford, pp. 140-41). Stakey was nevertheless subjected to involuntary civil commitment under the Marchman Act, without the benefit of either roadside sobriety tests or breath alcohol testing.  The Sheriff's motion for summary judgment does not contest (for purposes of the motion) that Stakey's constitutional rights were violated.   The only question, then, is whether the Sheriff's policies, customs, or practices, as set forth above, caused Stakey's involuntary civil commitment, contrary to the Fourth Amendment and 42 U.S.C. § 1983.   Based on the foregoing, that determination must be made by

the finder of fact.

      **WHEREFORE**, Stakey requests that the Court enter an Order denying the Collier County

Sheriff's Office's motion for summary judgment (as to Count III only).

      DATED this   22nd   day of December, 2006.

             By:  *s/. Hugh L. Koerner*
                 Hugh L. Koerner

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this __22nd__ day of December, 2006, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.

By: __*s/. Hugh L. Koerner*_____
Hugh L. Koerner
Florida Bar No.: 716952
Attorneys for Plaintiff
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone:  (954) 522-1235
Facsimile:   (954) 522-1176
Email: hlkpa@fdn.com

25

**SERVICE LIST**
**Case No.: 2:05-CV-598-FtM-33DNF**

Richard A. Giuffreda, Esq.
Florida Bar No.: 705233
Email:  Richard@Purdylaw.com
PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
International Building, Suite 1216
2455 East Sunrise Boulevard
Fort Lauderdale, FL  33304
Telephone:  954/462-3200
Facsimile:  954/462-3861
**Attorneys for Amy Stanford, Daniel Salls, and Don Hunter, as Sheriff of Collier County**

Hugh L. Koerner
Florida Bar No.: 716952
Email: hlkpa@fdn.com
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone:  (954) 522-1235
Facsimile:   (954) 522-1176
**Attorney for Plaintiff Greg W. Stakey**

26